And so we will move directly to case number 5, Jones v. Tegels, number 22-2084. Mr. Malkus. Good morning, and may it please the Court, my name is David Malkus and I'm appearing on behalf of Johnny Jones. Supreme Court case law holds that courts must give a broad rather than narrow interpretation to a defendant's request for counsel, and further that courts must evaluate such requests as ordinary people would understand them. The State Court decision here unreasonably applied this precedent because no ambiguity surrounded the plain language that Mr. Jones used. When Mr. Jones said, so y'all can get a public pretender right now, a reasonable listener would understand that he wanted an attorney. Additionally Why is, I mean, given the deferential standard that we are obliged to apply here, for starters, there is no such job as a public pretender, you know, it could be seen as wry wit or something even if people weren't laughing. I mean, I know you can listen to the recording and maybe there was general laughter, maybe not, but I just don't know why it's so far outside the realm of how that exchange could be understood to permit us to find that the standards of AEDPA have been met. Well, first, public defender is a term that's commonly used by public defender clients. Pretender is used? Pretender is, yes. Okay. And I think it's also important that the detectives here, in fact, understood that Mr. Jones was asking for a public defender. When Mr. Jones said that he wanted a pretender, detectives told him that they're actually called public defenders. Mr. Jones confirmed that that's what he was referring to and detectives told Mr. Jones that they could not provide a public defender for him. Can I pause on that? You are not, as I understand it, making any argument that he asked for counsel but was inappropriately turned down. I mean, we have the defective saying, after he says, oh yeah, the defective says, um, we obviously, due to the time right now, we can't, um, dot, dot, dot, you know, a little bit of a pause. So you could read that as saying, we're not going to get you a lawyer even though you have asked for one, but I do not see you making that argument exactly in your briefs. I do believe that the detectives were telling Mr. Jones that they were not going to provide him a public defender based on the time of night, that Mr. Jones had asked for a public defender. The public defender detectives understood what he was asking for and basically said it was not possible for them to honor that request. I mean, that would be an independent Fifth Amendment violation. It wouldn't just be a Miranda kind of problem. Yes, that's true. My briefs focus on essentially that when Mr. Jones asks for a public pretender, again, a reasonable listener would understand what he was asking for at that point based on the fact that public defenders are commonly referred to as public pretenders by their, by their own clients. And so I think that the plain language that he used made his request clear to the officers. The officers understood that and the questioning did not end at that point and that forms the basis for the Miranda violation. So what about the fact that literally seconds after the detective answers, as I just said, Mr. Jones just jumps, he re-initiates discussion, I'll put it that way, jumps right back into the conversation and says, how much time do you face for reckless homicide? Yes, he asks that single question and in my review of the audio recording, the detectives tell Mr. Jones that they cannot honor his request for a public defender and then there's a pause for about five to six seconds before Mr. Jones asks for, or asks the question about prison exposure. So I think that that pause is of some significance as well because it's not a situation where Mr. Jones immediately leaps into another question where he's indicating that he just wants to continue on with the interrogation. It's a situation where detectives are telling Mr. Jones that he cannot have a public defender, they're not ending the interrogation at that point and instead they're just sitting there in awkward silence waiting for him to say something and then once he does, they answer the question and then they continue on with their questions of him. Which he doesn't object to, I mean, I'm just wondering, there's the first question which is whether he actually invoked his right to counsel unambiguously enough that we could actually say there was a, you know, it was an unreasonable application of clearly established Supreme Court law for the Wisconsin courts not to see it that way. So that's the first question. Even if he did ask for a lawyer, it is certainly possible and the Supreme Court has held this in situations where somebody reinitiates the discussion, you've waived that. In certain circumstances, yes, Your Honor, that's correct. I don't believe that that is the case in this situation where Mr. Jones asks one single question about his exposure to prison after a five to six second pause when he's been refused counsel. I don't think that that would qualify as a waiver under the Smith case that I cited in my brief in which the court talks about how there can be waiver in certain circumstances but it has to be not just a suspect reinitiating but it has to be in addition to that annoying and voluntary and intelligent waiver. I don't think that there's any basis for that in this record and that's not an argument that the respondent has made at any stage in this case. So I don't think there's enough to find that this was annoying and intelligent and voluntary waiver of his right to counsel just by asking a single question about prison. I'm trying to understand, going back to the unambiguous invocation, what your best case is that the question he asks, and I'm just going to state it as if he asked for a public defender right now, that that's unambiguous. Because you've got Davis which says when you include that kind of equivocation language or signals like the word maybe or question mark, that it's not unambiguous. What case do you have that says the contrary, Supreme Court case, or are you merely relying on the broader precepts we have that say you must interpret these things broadly, so forth, so on? Yes, Your Honor, I'm relying on those broader precepts. I don't believe that there is a case with identical facts and I understand that that would be a separate basis for habeas relief if there was a case with identical facts in the Supreme Court with a different holding. But my argument here is that when he said, so y'all can get a public pretender right now, a reasonable listener would understand that he was asking for an attorney. And in particular, the words can and right now are in stark contrast to the language that was used in the Davis case that you cited where the suspect, the defendant is stating maybe I should talk to a lawyer, whereas those words do suggest some level of ambiguity. The words can and right now are more decisive. I believe that this court in several cases that I cited in my brief has held that the word can by definition is more decisive and shows that a suspect had a present sense desire to consult with counsel. And so I understand that that's not Supreme Court case law, but I think the reasoning of those cases is no less applicable or no less true in this case. And I do say that I have about 90 seconds. If you'd like to reserve. I would. Unless. Okay. Thank you. Let me do that. Mr. Held. Thank you, Your Honor. I'm Assistant Attorney General Elliot Held on behalf of the respondent, Warden Lizzie Tagles. May it please the court. Mr. Jones is asking for a remedy reserved for extreme malfunctions in state criminal justice systems. And he's asking for that remedy where no constitutional violation occurred and where the state court reasonably determined under the totality of the circumstances that even the prophylactic Miranda rule was not violated. The ruling was reasonable under Davis v. U.S. because the public pretender comment only indicated at most that he might want an attorney. So you think he needed to say, so y'all can get a public pretender right now, comma, and I want you to do that, period? That would certainly give him better argument, Your Honor. He doesn't necessarily have to say those exact words. But I think the public pretender comment, first, whether or not he was one of the folks who was laughing on the tape, I don't think it's clear error under 2254E1 that he wasn't. But even if this court thinks that that was clear error, public pretender is in itself objectively, a reasonable officer would objectively perceive that as a joke. They laughed in this case. That doesn't prove that it's objectively a joke. But I think it's objectively a joke and it indicates... But the detectives cleared that up, right? I mean, to the extent that they had any sort of misunderstanding, it seemed like certainly in the statements that followed that Detective Hensley obviously knew what he was talking about. Yes, Judge Lee. They certainly understood that he meant public defender when he said public pretender. However, the question, of course, is whether he was unambiguously requesting one or not requesting. And in this case, it was a question and they admit in their reply brief, page five, that it was said in the form of a question. So y'all can get a public pretender right now. And right now, they argue, favors them. I would argue that right now favors us because this was said at 147 a.m. in the morning. If you look at the record, the interrogation started at 118, Miranda was red at the beginning, 29 minutes in, they say this, it's two in the morning, and they laugh and they say no, obviously, because of the time right now, we can't. And then, of course, there's a short pause and then he asks the question, how much time is it anyway you face off reckless homicide? The state court reasonably considered that follow-up question by Mr. Jones under Smith v. Illinois because not only was it not in response to further interrogation, it wasn't in response to anything. He just interjected that as Judge Lee. Well, let me ask you about that. Why was it not in response to being told he wasn't going to be given a lawyer? So then he asked the detectives the very question he would have asked a lawyer, a very reasonable question for a lawyer, had he been given one. He pauses five or six seconds. It's very clear he's not going to be given a lawyer. So he asked the one burning question he has for a lawyer right now to the detectives. Right. So it's not interrogation first, I would say, because of course, Rhode Island would be in this. It has to be a statement that's reasonably, you know, would be expected to elicit an incriminating response. And they just say, no, because of the time we don't have a lawyer, it's not a question or, you know, give us your story or something like that. It is in response. You could argue that it's in response to something that they said, but there's no Supreme Court case law that indicates that anything that he says after something that one of the detectives says can't be used in the ambiguity assessment. It's only if it is troublesome because he's told, in effect, it's the middle of the night. We're not going to get you a lawyer right now, which isn't the right answer, you know, under Miranda. They have to say, you've now asked for a lawyer. It may take a little while, but we're going to get you one. And so just adjourn the questioning. Everybody goes off and takes a nap, you know, and then the lawyer shows up in the morning whenever the lawyer comes. So that's not what happens, which is what should have happened. Well, under Davis, of course, it's the detective's risk to take if they think that it was an ambiguity in this case. So they didn't ask him, they didn't immediately interrogate him. They just told him, you know, of course, I think the exact quote that's in here is, we obviously, due to the time right now, we can't. And then there's a few seconds, and then he asks how much time he's facing, and then it continues. Under Davis, of course, they would have been permitted to ask clarifying questions, and maybe it would have been ideal if they did that. But it's their risk to take if they don't want to, if they think it's ambiguous. And they are allowed to consider things that he says later as long as it's not in response to interrogation in determining whether his invocation was ambiguous. And this statement that he makes about how much time he's facing shows that his invocation was ambiguous because it shows that he's still making up his mind. How much time? You know, the case law asks us to not focus on these post-interrogation responses and, you know, detectives can consider what he says later. Isn't there, aren't we permitted, however, to consider what happens before? And leading up to this exchange, there's a lot of space where Mr. Jones is not talking. And the detectives say, we invite you to talk. We want to hear your story. He's not saying anything. And then they say, okay, how do you want to proceed? Do you want to just hear us out? And he says, I'll hear you out. So he takes a lot, he goes through great pains not to make a statement. And so aren't we permitted to consider that when we get to this moment where he finally does make a statement after being given incorrect information? You're permitted to consider the totality of the circumstances, Your Honor. It's a totality of the circumstances test under Davis. And under this court's ruling in Datsy v. Dittman, this court noted in the Supreme Court says it in Yarborough, that the state courts get great leeway in their application of a totality of the circumstances type test under EDPA. And EDPA, of course, gives them great leeway to begin with, but especially when you have a totality of the circumstances. So you can consider what he said before. You can consider what he said after, as long as it's not in response to an interrogation, which his asking about how much time he was facing wasn't. You can consider that when he said, so y'all can give me a public pretender right now, that he was asking about essentially the immediate availability of a public pretender at 147 a.m. in the morning, which is a circumstance. So yes, Your Honor, you can consider the totality of the circumstances. Now, how do we not have an unreasonable determination of fact here? This is separate from the unambiguous invocation question, where we have two courts who said he clearly was joking when he said public pretender. And then we listen to the recording. And so far as I hear, I don't hear a hint of merriment in his voice. And then we have two courts that say, and clearly three people were laughing after he made this joke. And I listened to the recording, and I can't tell how many people were laughing, much less whether one of them was Mr. Jones. So how do we not have an unreasonable determination of fact here in Brooklyn? For a couple of reasons, Your Honor. First, as far as who's laughing, the court that said that I definitely, to my ears, he's laughing, that was the trial court at the hearing. And the trial court, remember, they heard Mr. Jones testify in his courtroom and heard the detectives testify in the courtroom. So it's familiar with the voices. And then it listened to the recording. And then the court of appeals said, well, we can't say that it's clearly erroneous. There's at least one person laughing, and probably two or three. And they said, we can't find that it's clearly erroneous. So I don't think we can find that it's clearly erroneous. Just because if I can't tell exactly who's laughing, that doesn't mean that the trial court couldn't, as long as I can't hear something on that recording that proves that he's not laughing. And the second thing is, even if we think he's not laughing, the fact that he doesn't say it in a joking manner doesn't mean that it's not a joke. The phrase itself, I think, as the state court said accurately, I think, the phrase public pretender is a joke. And you can say a joke with a straight face. Sometimes that's the manner of delivery as part of the joke. So it doesn't mean that he doesn't have to say the joke while he's laughing or in a joking delivery. And I think a reasonable officer would interpret this public pretender as a joke. It's a joke about the public defense bar. As the state court, or excuse me, the US District Court noted Judge Ludwig, he said, well, he's not judging, he's not joking about his right to an attorney, but he is joking about the public defense bar. So I mean, it's a joke, I think. But it seems, I guess, going back to Judge Jackson-Kimmitt's point, at one point he says, when Detective Chavez says, you said it right, pretender, there's laughter. And then Detective Chavez says, they're called public defenders, Jones goes, oh, yeah, right? Indicating, perhaps, to some, that he was just familiar with the language that he heard from other people, and he didn't really know the formal terminology of what they're called. Is that another way of reading or listening to the audio? That's a reasonable interpretation, Your Honor. But I think that the state court's interpretation was also reasonable. And I want to sum up, because I've only got 30 seconds left. I think even if we think he's not laughing, which I think it's a reasonable interpretation that he is, and even if we think this isn't a joke, which I think is even much harder to say isn't reasonable, it's still a question. It's not a request. I want a public defender right now. So y'all can get a public pretender right now, almost 2 in the morning, and of course, they all interpret it as a joke. They busted out laughing. And then he says, in the transcript at one point, he says, we made a joke. So he seems to say that he made a joke. It's docket 10, page 136 of this court's docket. So it seems that my time is up. So unless there are further questions, I will turn the podium back over. All right. I see none. Thank you very much, then. Anything further, Mr. Malkus? Just in regards to the unreasonable determination of facts, I wanted to emphasize that at the suppression motion hearing, there was no testimony at all from the detectives or Mr. Jones regarding Mr. Jones's tone of voice, whether he spoke in a non-serious manner or with a hint of jest in his voice. There was also no testimony at that hearing in regards to laughter. And so I know that the respondent just cited the suppression hearing testimony. That is not a basis for the state court's fact finding on Mr. Jones's tone and laughter. The state court judge at the trial court level was very clear that he said, to my ears, it sounds like he's just joking and speaking in a tone of jest. So the state court was relying solely on the recording itself to make its factual findings. The recording itself does not in any way support the state court's factual findings, which makes those findings erroneous and clearly so. And then just to highlight that I know opposing counsel mentioned the words right now and that was used to indicate that maybe Mr. Jones wanted a public defender, but he didn't want one so badly that he was refusing to not answer questions. I think that that's a concession that Mr. Jones did have a present sense desire to consult with counsel and that he was not joking. Thank you. Thank you very much. Thanks to both counsel. We will take the case under advisement.